**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: Runnin L Farms, LLC | ) | Case No.: 19-82716-CRJ-11 |
| | ) | |
| EIN: xx-xxx0864 | ) | |
| | ) | |
| Debtor. | ) | CHAPTER 11 |
| | ) | |

**DEBTOR'S SECOND AMENDED**
**PLAN OF REORGANIZATION**

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL  35804
Tel: (256) 512-9924
Fax: (256) 512-9837

Attorneys for Debtor-in-Possession

Dated: **February 28, 2020**

1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | | |
|---|---|---|---|
| In re: | Runnin L Farms, LLC | ) | Case No.: 19-82716-CRJ-11 |
| | | ) | |
| | EIN: xx-xxx0864 | ) | |
| | | ) | |
| | Debtor. | ) | CHAPTER 11 |
| | | ) | |

**DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION**

Runnin L Farms, LLC (the "Debtor"), as Debtor and Debtor-in-Possession, proposes this Amended Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of Title 11 of the United States Code for the resolution of the Debtor's outstanding creditor claims and equity interests. Reference is made to the Debtor's Disclosure Statement (the "Disclosure Statement") for a discussion of the Debtor's history, business, properties and results of operations, and for a summary of this Plan and certain related matters.

All holders of claims and interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. No materials, other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of this Plan.

**ARTICLE 1**
**DEFINITIONS**

As used herein, the following terms have the respective meanings specified below, and such meanings shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder" and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any capitalized term used but not defined herein shall have the meaning ascribed to such term in the Bankruptcy Code. In addition to such

other terms as are -defined in other sections of the Plan, the following capitalized terms have the following meanings when used in the Plan.

1.1    "Administrative Claim" means a Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(1) of the Bankruptcy Code.

1.2    "Allowed Claim" means a Claim that is (a) not a Disputed Claim or (b) a Claim that has been allowed by a Final Order.

1.3    "Ballots" means the written Ballots for acceptance or rejection of the Plan.

1.4    "Bankruptcy Code" or "Code" means Title 11 of the United States Code as now in effect or hereafter amended.

1.5    "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, which presides over this proceeding, or if necessary, the United States District Court for said District having original jurisdiction over this case.

1.6    "Bankruptcy Rules" means, collectively (a) the Federal Rules of Bankruptcy Procedure, and (b) the local rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

1.7    "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.8    "Cash" means cash, wire transfer, certified check, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, and commercial paper of any Person, including interests accrued or earned thereon, or a check from the Debtor.

1.9    "Claim" means any right to payment from the Debtor arising before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor prior to the Confirmation Date, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, contested, uncontested, secured or unsecured.

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document    Page 3 of 29

1.10    "Class" means one of the classes of Claims or Interests defined in Article III hereof.

1.11    "Confirmation" means the entry of a Confirmation Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Bankruptcy Code.

1.12    "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.13    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.14    "Debtor" means Runnin L Farms, LLC

1.15    "Disclosure Statement" means the Disclosure Statement filed by the Debtor as approved by the Bankruptcy Court for submission to the Creditors, interest holders, and parties-in-interest of the Debtor, as it may have been amended or supplemented from time to time.

1.16    "Disputed Claim" means a Claim as to which a proof of claim has been Filed or deemed Filed under applicable law, as to which an objection has been or may be timely Filed and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered a Disputed Claim to the extent that: (i) the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in their respective Schedules to the extent of such excess; (ii) any corresponding Claim listed by the Debtor in their respective Schedules has been scheduled as disputed, contingent, or unliquidated, irrespective of the amount scheduled; or (iii) no corresponding Claim has been listed by the Debtor in the respective Schedules. Disputed Claims also includes Claims subject to a pending action for equitable subordination of such Claims.

1.17    "Distributions" means the properties or interests in property to be paid or distributed hereunder to the holders of Allowed Claims.

1.18    "Docket" means the docket in the Reorganization Case maintained by the Clerk.

1.19    "Effective Date" means the twentieth (20th) business day after an Order confirming this Plan becomes final and no longer open for appeal, stay or reconsideration in

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document    Page 4 of 29

accordance with the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Appellate Procedure.

1.20    "Estate" means the estate created in this Reorganization Case under Section 541 of the Bankruptcy Code.

1.21    "Executory Contract" means any unexpired lease and/or executory contract as set forth in Section 365 of the Code.

1.22    "File" or "Filed" means filed with the Bankruptcy Court in the Reorganization Case.

1.23    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the Docket in the Reorganization Case, which has not been reversed, stayed, modified or amended.

1.24    "Impaired" as to a Class means the Plan alters the legal, equitable or contractual rights of a Claim or Interest holder within the meaning of 11 U.S.C. § 1124.

1.25    "Order" means an order or judgment of the Bankruptcy Court as entered on the Docket.

1.26    "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, indenture trustee, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code).

1.27    "Petition Date" means September 9, 2019, the date on which Debtor filed the voluntary Chapter 11 petition.

1.28    "Plan" means this Plan of Reorganization in its present form, or as it may be amended, modified, and/or supplemented from time to time in accordance with the Bankruptcy Code, or by agreement of all affected parties, or by order of the Bankruptcy Court, as the case may be.

1.29    "Pre-Petition Tax Claim" means a Tax Claim that arises prior to the Petition Date.

1.30    "Priority Claim" means all Claims entitled to priority under 11 U.S.C. §§ 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Tax Claim.

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document        Page 5 of 29

1.31 "Pro Rata" means proportionately, based on the percentage of the distribution made on account of a particular Allowed Claim bears to the distributions made on account of all Allowed Claims of the Class in which the Allowed Claim is included.

1.32 "Rejection Claim" means a Claim resulting from the rejection of a lease or executory contract by the Debtor.

1.33 "Reorganization Case" means, collectively, the Debtor's case under Chapter 11 of the Bankruptcy Code that was commenced on the Petition Date.

1.34 "Schedules" means the Schedules of Assets and Liabilities, Statement of Financial Affairs and Statement of Executory Contracts that may be filed by the Debtor with the Bankruptcy Court, as amended or supplemented on or before the Confirmation Date, listing the liabilities and assets of the Debtor.

1.35 "Secured Claim" means any Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.36 "Security Agreement" means the documentation under which a lien against property is reflected.

1.37 "Tax Claim" means either (a) an Unsecured Allowed Claim of a governmental entity as provided by Section 507(a)(8) of the Code, or (b) an Allowed Claim of a governmental entity secured by a lien on property of the Debtor under applicable state law.

1.38 "Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Claim, Pre-Petition Tax Claim or Secured Claim.

## ARTICLE 2
## TREATMENT OF
## ADMINISTRATIVE EXPENSE CLAIMS
## AND PRIORITY TAX CLAIMS.

2.1 **Administrative Expense Claims.**

Except to the extent that a holder of an allowed administrative expense claim has been paid by a Debtor prior to the Effective Date or agrees to less favorable treatment, as provided for

6

by this Plan, each holder of an allowed administrative expense claim shall receive cash from the Debtor obligated for the payment of such allowed administrative expense claim in an amount equal to the allowed amount of such administrative expense claim on the later of the Effective Date and the date such administrative expense claim becomes an allowed administrative expense claim, or as soon thereafter as is practicable; provided, however, that allowed administrative expense claims representing liabilities incurred in the ordinary course of business by a Debtor or other obligations incurred by such Debtor shall be paid in full and performed by such Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2     **Professional Compensation and Reimbursement Claims.**

Any entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred on behalf of the Debtor and any Creditors' Committee through and including the Effective Date under Section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Debtor in full and in cash in the amounts allowed upon (i) the date the order granting such award becomes a final order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such allowed claim. The Debtor is authorized to pay compensation for professional services rendered and reimburse expenses incurred on behalf of the Debtor and the creditors' committee after the Effective Date in the ordinary course and without Bankruptcy Court approval.

2.3     **Priority Tax Claims.**

Except to the extent that a holder of an allowed priority tax claim has been paid prior to the Effective Date or agrees to less favorable treatment, each holder of an allowed priority tax claim shall receive from the debtor obligated for the payment of such claim, and at the sole option of such debtor, (i) cash in an amount equal to the allowed amount of such priority tax claim on the later of the Effective Date and the date such priority tax claim becomes an allowed priority tax claim, or as soon thereafter as is practicable, or (ii) equal cash payments to be made initially on the Effective Date or as soon thereafter as practicable and monthly thereafter in an aggregate amount equal to such allowed priority tax claim, together with interest at a fixed

annual rate, over a period from the Effective Date through the fifth anniversary after the Effective Date; provided, however, that such election shall be without prejudice to the Debtor's right to prepay such allowed priority tax claim in full or in part without penalty.

# ARTICLE 3
## DESIGNATION OF
## CLAIMS AND INTERESTS

3.1     The following is a designation of the classes of claims and interests under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, claims that are not impaired have been noted and will not vote on the Plan. A claim or interest is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class, and is classified in another class or classes to the extent that any remainder of the claim or interest qualifies within the description of such other class or classes. A claim or interest is classified in a particular class only to the extent that the claim or interest is an allowed claim or allowed interest in that class and has not been paid, released or otherwise satisfied before the Effective Date; a claim or interest which is not an allowed claim or interest is not in any Class. Notwithstanding anything to the contrary contained in this Plan, no distribution shall be made on account of any claim or interest that is not an allowed claim.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Secured Claim Northland Capital Financial | Claims ## 1, 2, 3 & 4 (collectively $97,082.12) Impaired | The creditor in this class will be paid in full its approved claim amount over the course of a 96-month term with interest accruing at the rate of Prime plus 1.00%, as published in the *Wall Street Journal* (4.75% as of December 18, 2019), and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |

8

| | | |
|---|---|---|
| Class 2 – Secured Claim BMO Harris | Claims ## 6, 7 & 9 (collectively $366,161.75) Impaired | The creditor in this class will be paid in full its approved claim amount over the course of a 60-month term with interest accruing at the rate of 5.75% and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |
| Class 3 – Secured Claim BMO Harris | Claims ## 8 & 10 (collectively $55,303.36) Impaired | The creditor in this class will be paid in full its approved claim amount over the course of a 96-month term with interest accruing at the rate of 5.75% and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |
| Class 4 – Secured Claim Stearns National Bank Association | Claim # 18 ($42,544.02) Impaired | The creditor in this class will be paid in full its approved claim amount over the course of a 96-month term with interest accruing at the rate of Prime plus 1.00%, as published in the *Wall Street Journal* (4.75% as of December 18, 2019), and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |

| | | |
|---|---|---|
| Class 5 – Secured Claim People's Trust Bank | Claims ## 13, 14, 15, 16 & 17 (collectively $607,325.10) Impaired | The creditor in this class will be paid in full its approved claim amount, less a credit for the applied proceeds of any collateral property liquidated before the Effective Date, over the course of a 78-month term with interest accruing at the rate of Prime plus 1.00%, as published in the *Wall Street Journal* (4.75% as of December 18, 2019), and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |
| Class 6 – Falcon Leasing | Claim # 1 ($27,907.35) Impaired | The creditor in this class will be paid in full its approved claim amount over the course of a 96-month term with interest accruing at the rate of Prime plus 1.00%, as published in the *Wall Street Journal* (4.75% as of December 18, 2019), and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |
| Class 7 – EvaBank | Claim # 21 ($76,699) Impaired | The creditor in this class will be paid in full its approved claim amount over the course of a 96-month term with interest accruing at the rate of Prime plus 1.00%, as published in the *Wall Street Journal* (4.75% as of December 18, |

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document      Page 10 of 29

| | | |
|---|---|---|
| | | 2019), and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |
| Class 8 – Secured Claim Engs Commercial Finance Co. | Claim # 5 ($121,198.93) Impaired | The Debtor has determined that the creditor in this class possesses a valid lien on collateral property which is not necessary to the Debtor's effective reorganization. This creditor has received relief from the 11 U.S.C. § 362 Automatic Stay and may exercise its state-law remedies to liquidate its collateral.<br><br>As of the Effective Date, should any unpaid deficiency balance exist following this creditor's liquidation of its collateral, the creditor may amend its proof of claim to reflect its remaining unsecured deficiency balance. Thereafter, any remaining deficiency claim will be reclassified as a general unsecured debt and receive the same treatment as the creditors in Class 9, below.<br><br>To the extent the Debtor retains any property upon which Engs possesses a valid lien, the creditor in this class will be paid in full its approved secured-for-value claim amount over the course of a 96-month term with interest accruing at the rate of Prime plus 1.00%, as published in the *Wall Street* |

| | | |
|---|---|---|
| | | *Journal* (4.75% as of December 18, 2019), and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |
| Class 9– Sumitomo Mitsui Finance and Leasing Co, Ltd. | Claim # 19 ($238,039.61) Impaired | The creditor in this class will be paid in full its approved claim amount over the course of a 96-month term with interest accruing at the rate of Prime plus 1.00%, as published in the *Wall Street Journal* (4.75% as of December 18, 2019), and a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. |
| Class 10 – Administrative Claims of Professionals Employed by the Debtor | Impaired, Not Entitled to Vote | To the extent the Debtor cannot pay the claimants in this Class in full within 120 days of the Effective Date, and to the extent that that the claimants consent to such treatment, the Debtor will begin making monthly payments of $1,000.00, split on a *pro-rata* basis between all claimants on their approved claim amounts until the total allowed claims in this class are paid in full. Payments to claimants in this class will not begin until after the Bankruptcy Court has entered a final order approving these claimant fees and expenses. |

12

| | | |
|---|---|---|
| Class 11 – Unsecured Priority IRS Tax Claim | Claim # 11 ($27,037.77) Impaired, Not Entitled to Vote | The creditor in this class will be paid in full is approved claim amount over the course of a 60-month term with interest accruing at the rate of 5.00%, with a standard amortization schedule for the term. New payments will begin on the Effective Date. |
| Class 12 – General Unsecured Claims | Claims ## 11 & 12 (collectively $6,414.71), Impaired | Beginning on the Effective Date, the Debtor will commence equal monthly payments of $100.00, split and apportioned to the creditors in this Class. The allowed claims will each receive a *pro-rata* split of every payment based on their claim's proportionate share of the total allowed claims in this Class on the date that each individual monthly payment's issuance. Monthly payments will continue until payment in full of all allowed claims in this Class. |
| Class 13 – Interests of Equity Interest Holders in Debtor | Impaired; Not Entitled to Vote | Equity interest holders will retain their membership interests in Debtor. |

1. **Secured Creditors (Classes 1-9)**

The creditors in Classes 1-9 will be paid in full, to the extent the Debtor retains the creditors' collateral property, because these creditors are secured for value and are entitled to payment-in-full. 11 U.S.C. § 506(b). To the extent the Debtor does not retain some or all of any secured creditor's collateral property, any such deficiency amount arising from those claims may be treated as a general unsecured claim, pursuant to the terms of the Plan.

2. **Priority Unsecured Claims (Classes 10-11)**

The claimants in Classes 10 and 11 will be paid in full because these claims are entitled to priority pursuant to 11 U.S.C. § 507 and the Plan must contemplate payment in full before any distributions are allowed to general unsecured creditors.

3. **General Unsecured Creditors (Class 12)**

The Plan proposes paying unsecured creditors in full over time in the order of priority stated in 11 U.S.C. § 507. The Bankruptcy Code requires that the allowed senior-priority claims are either satisfied in full or that the Plan contemplates payment in full before any distributions may be made to general unsecured creditors.

4. **Equity Security Holders (Class 13)**

The equity security holders will retain their shares in the Debtor. The equity interest holders' rights to receive any property from the Debtor will be predicated on all higher-priority claimants before distributions may be made to these interest holders.

## ARTICLE 5
## ACCEPTANCE OR REJECTION OF THE PLAN

The holders of Claims in all impaired Classes entitled to vote and listed above may vote to accept or reject the Plan.

## ARTICLE 6
## MEANS FOR EXECUTION AND
## IMPLEMENTATION OF THE PLAN

6.1     Funding of the Distribution. On the Effective Date, the Debtor shall first fund payments to the holders of Allowed Administrative Claims.

6.2     Authorization to Take Necessary and Appropriate Actions to Effectuate Plan. On the Effective Date, the Debtor shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan and Disclosure Statement.

6.3     Preservation of Rights of Action. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan in accordance with Section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce any claims, rights and causes of action that the Debtor or the Estates may hold against any entity, including, without limitation, any claims, rights or causes of action arising under Sections 544 through 551 or other sections of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory. The Debtor or any successor to or designee thereof may pursue those rights of action, as appropriate, in accordance with what is in the best interests of the Debtor.

6.4     Except as otherwise provided for with respect to applications of professionals for compensation and reimbursement of expenses under Article 3 of the Plan, or as otherwise ordered by the Bankruptcy Court after notice and a hearing, objections by any party other than the Debtor to filed Claims shall be Filed and served upon the holder of such Claim or Administrative Claim not later than the Effective Date, unless this period is extended by the Court. Such extension may occur *ex parte*. After the Effective Date, only the Debtor shall have the exclusive right to object to Claims.

## ARTICLE 7
## FUNDING AND METHODS OF DISTRIBUTION AND
## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

7.1     The Debtor's normal cash flow shall be the primary source of funds for the payments to creditors authorized by the U.S. Bankruptcy Court's confirmation of this Plan. The Debtor reserves the right to sell collateral for the purpose of providing some funding for the Plan as the Debtor deems necessary.

15

7.2     Cash Distributions. All Cash distributions made pursuant to the Plan shall be made by the Debtor from the Chapter 11 estate. Any such payments may be made either by check or wire transfer, at the option of the payor.

7.3     Distribution Procedures. Except as otherwise provided in the Plan, all distributions of Cash and other property shall be made by the Debtor on the later of the Effective Date or the date on which such Claim is Allowed, or as soon thereafter as practicable. Distributions required to be made on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable. No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is allowed.

7.4     Distributions to Holders of Allowed Administrative Expense Claims. Commencing on the Effective Date, the Debtor shall, in accordance with Article 3 of the Plan, distribute to each holder of a then unpaid Allowed Administrative Expense Claim in the Allowed amount of such holder's Claim if and to the extent that the balance, if any, of such Claims is Allowed by Final Order. The Debtor shall not tender a payment to the holders of Allowed Administrative Expense Claims until all Disputed Claims that are alleged to be Administrative Claims have been allowed or disallowed.

7.5     Disputed Claims. Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim.

7.6     Delivery of Distributions and Undeliverable or Unclaimed Distributions.

(a)     Delivery of Distributions in General.

Distributions to holders of Allowed Claims shall be distributed by mail as follows: (1) at the addresses set forth on the respective proofs of claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim; or (3) at the address reflected on the Schedule of Assets and Liabilities filed by the Debtor if no proof of claim or proof of interest is Filed and the Debtor has not received a written notice of a change of address.

16

(b)     Undeliverable Distributions.

(i) Holding and Investment of Undeliverable Property. If the distribution to the holder of any Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Unclaimed Cash shall be held in trust in a segregated bank account in the name of the Debtor, for the benefit of the potential claimants of such funds, and shall be accounted for separately.

(ii) Distribution of Undeliverable Property After it Becomes Deliverable and Failure to Claim Undeliverable Property. Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within two years after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan. In such cases, any cash or securities held for distribution on account of such Claims shall become property of the Debtor.

7.7     Failure to Negotiate Checks. Checks issued in respect of distributions to holders of Allowed Claims under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. The Debtor shall hold any amounts returned to the Debtor in respect of such checks. Requests for reissuance of any such check may be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such voided check is required to be made within six months of the original issuance date of the check. Thereafter, all amounts represented by any voided check shall become unrestricted funds of the Debtor. All Claims in respect of void checks and the underlying distributions shall be discharged and forever barred from an assertion against the Debtor and its property.

7.8     Compliance with Tax Requirements. In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document       Page 17 of 29

7.9    Setoffs. Unless otherwise provided in a Final Order or in this Plan, the Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor may have against the holder thereof or its predecessor, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims the Debtor may have against such holder or its predecessor.

## ARTICLE 8
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

8.1    Rejection of All Executory Contracts and Leases Not Assumed. The Plan constitutes and incorporates a motion by the Debtor to reject, as of the Effective Date, all pre-petition executory contracts and unexpired leases to which the Debtor are parties, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to a Final Order, or (ii) is the subject of a pending motion for authority to assume the contract or lease Filed by the Debtor prior to the Confirmation Date. The Plan establishes a bar date for filing Rejection Claims not already barred.

8.2    Bar Date for Filing of Rejection Claims. Any Claim for damages arising from the rejection under this Plan of an executory contract or unexpired lease that was not subject to an earlier bar date must be Filed within thirty (30) days after the mailing of notice of Confirmation or be forever barred and unenforceable against the Debtor, the Estates, any of their affiliates and their properties and barred from receiving any distribution under this Plan.

## ARTICLE 9
## EFFECTS OF PLAN CONFIRMATION

9.1    No Liability for Solicitation or Participation. As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

9.2     Limitation of Liability. Neither the Debtor and any professional Persons retained by them; any of their affiliates nor any of their officers, directors, partners, associates, employees, members or agents (collectively the "Exculpated Persons"), shall have or incur any liability to any Person for any act taken or omission made in good faith in connection with or related to the Bankruptcy Case or actions taken therein, including negotiating, formulating, implementing, confirming or consummating the Plan, the Disclosure Statement, or any contract, instrument, or other agreement or document created in connection with the Plan. The Exculpated Persons shall have no liability to any Creditors or Equity Security Holders for actions taken under the Plan, in connection therewith or with respect thereto in good faith, including, without limitation, failure to obtain Confirmation of the Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, precedent to Confirmation or to the occurrence of the Effective Date. Further, the Exculpated Persons will not have or incur any liability to any holder of a Claim, holder of an Interest, or party-in-interest herein or any other Person for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as finally determined by the Bankruptcy Court, and in all respects such persons will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

9.3     Other Documents and Actions. The Debtor as Debtor-In-Possession may execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

9.4     Unless otherwise provided, all injunctions or stays provided for in the Reorganization Case pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

9.5     So long as the Debtor's Chapter 11 case is not dismissed, the protections afforded it by 11 U.S.C. § 362 will remain in full effect to stay all collection actions of any pre-petition debts, claims, liens, or other related occurrences against the Debtor, the bankruptcy estate, or property of the bankruptcy estate for the pendency of its Chapter 11 Plan.

9.6.    Stay on Governmental Units from Engaging in any Collection Action Against any Responsible Persons During the Pendency of the Plan. Unless otherwise provided, all Governmental Units, as defined by the Bankruptcy Code, are stayed from engaging in any collection action of any nature against any employee, owner, manager, director, or principal of

the Debtor relating to or arising from a tax liability of the Debtor which is concurrently or jointly assessed against any employee, owner, manager, director, or principal of the Debtor.

This section applies to any non-debtors deemed a "responsible person" and assessed the Trust Fund Recovery Penalty from a tax due arising from or due and owed by the Debtor in the ordinary course of operating its business. All Governmental Units must first look to the Debtor for satisfaction of any such tax debts and then may only take collection action against any responsible person if the Debtor's Chapter 11 case has been dismissed by the Bankruptcy Court, the Debtor's Plan fails to provider for satisfaction of the amounts to which any non-debtor is jointly responsible, or the Debtor has failed to cure any Plan default to that Governmental Unit, as described in the Section 9.7.

9.7 **Default and Opportunity to Cure.**

**During the pendency of this Plan, should any party-in-interest aver that the Debtor has materially defaulted to any of its obligations under this Plan, such party must give written notice of the default to the Debtor and the Debtor's Counsel listed below. The Debtor will have 21 days from receipt of the notice to cure any such default. If the Debtor fails to cure within this 21-day deadline, the party giving notice of the default may proceed accordingly with any legal rights available under applicable law.**

## ARTICLE 10
## CONFIRMABILITY OF PLAN AND CRAMDOWN

10.1 Confirmability. In order to confirm the Plan, the Bankruptcy Code requires that the Court make a series of findings concerning the Plan and the Debtor.

a. **Best Interests Test/Liquidation Analysis.**

Notwithstanding the acceptance of the Plan by each Impaired Class, Section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court determine that the Plan is in the best interests of each holder of a Claim or Interest in an Impaired Class if any holder in that Class has voted against the Plan. Accordingly, if an Impaired Class under the Plan does not unanimously accept that Plan, the "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of such Impaired Class a recovery on account of the member's Claim or Interest that has a value, as of the Effective Date, that is not less than the value of the

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document    Page 20 of 29

distribution that each such member would receive or retain if Debtor were liquidated under Chapter 7 of the Bankruptcy Code commencing on the Effective Date.

To determine what members of each impaired Class of Claims would receive if the Debtor's estate was liquidated under Chapter 7, the Court must consider the values that would be generated from a liquidation of the Debtor's assets and properties in the context of a hypothetical liquidation under Chapter 7. From a review of the Debtor's assets and liabilities, it is apparent that liquidation would not be a feasible solution to the repayment of these Debtor's debts.

There are no long-term accounts receivables or residuary contact rights. Accordingly, a Chapter 7 Trustee would need to liquidate the Debtor's assets. It is highly likely that unsecured creditors would receive no distribution in a Chapter 7 liquidation of the Debtor's estate.

Thus, this Plan, which provides for the payment of secured and unsecured creditors is a superior option to a Chapter 7 liquidation.

### b.  Feasibility.

Section 1129(a)(11) of the Bankruptcy Code requires a finding that Confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the Debtor unless liquidation is expressly contemplated by the Plan. A review of the Debtor's proposed Plan payments and disposable income establish that the Plan is feasible within the meaning of Section 1129(a)(11) of the Bankruptcy Code.

The Debtor expects its business to become both profitable and its revenues predictable following confirmation of its Plan. For the foreseeable period to come following confirmation of its Plan, the Debtor projects steady revenue and expenses. The details of this case strongly support the feasibility of the proposed Plan.

### c.  Classification.

Section 1122 of the Bankruptcy Code sets forth the requirements relating to classification of claims. Section 1122(a) provides that claims or interest may be placed in a particular class only if they are substantially similar to the other claims or interest in that class. The Debtor believes that all Classes under the Plan satisfy the requirements of Section 1122(a). The Debtor believes that the classification of Claims set forth in the Plan is appropriate in classifying substantially similar Claims together, and does not discriminate unfairly in the treatment of those

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document      Page 21 of 29

Classes. The Debtor believes that the Plan adheres to the absolute priority rule and treats holders of Claims and Interests in accordance with their contractual entitlement and applicable law.

10.2  **Non-Consensual Confirmation.**

The Bankruptcy Code provides for confirmation of the Plan even if it is not accepted by all impaired Classes, as long as at least one impaired Class of Claims has accepted it (without counting the acceptances of insiders). These so-called "cramdown" provisions are set forth in Section 1129(b) of the Bankruptcy Code. The Plan may be confirmed under the cramdown provisions if, in addition to satisfying the other requirements of Section 1129 of the Bankruptcy Code, it (i) is "fair and equitable" and (ii) "does not discriminate unfairly" with respect to each Class of Claims or Interests that is impaired under, and has not accepted, such Plan.

1.  **Fair and Equitable Standard.**

With respect to a dissenting Class of unsecured creditors, the "fair and equitable" standard requires, among other things, that the Plan contain one of two elements. It must provide either that each unsecured creditor in the Class receive or retain property having a value, as of the Effective Date, equal to the Allowed amount of its Claim, or that no holder of Allowed Claims or Interests in any junior Class may receive or retain any property on account of such Claims or Interest. The strict requirements as to the allocation of full value to dissenting Classes before junior Classes can receive a distribution are known as the "absolute priority rule." In addition, the "fair and equitable" standard has also been interpreted to prohibit any class senior to a dissenting class from receiving under a plan more than one hundred percent (100%) of its Allowed Claims.

2.  **The Plan Must Not Discriminate Unfairly.**

As a further condition to approving a cramdown, the Bankruptcy Court must find that the Plan does not "discriminate unfairly" in its treatment of dissenting Classes. A Plan of Reorganization does not "discriminate unfairly" if (a) the Plan does not treat any dissenting impaired Class of Claims or Interests in a manner that is materially less favorable than the treatment afforded to another Class with similar legal Claims against or Interests in the Debtor and (b) no Class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Debtor believes that the Plan does not discriminate unfairly as to any impaired Class of Claims or Interests.

If any impaired Class of Claims entitled to vote on the Plan does not accept the Plan by the requisite majority provided in Section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code or both. With respect to impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

## ARTICLE 11
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Reorganization Case after the Effective Date as is legally permissible, including, without limitation, jurisdiction to:

11.1    Allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim or Indenture Trustee expenses and the resolution of any and all objections to the allowance or priority of Claims or Interests;

11.2    Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

11.3    Resolve any motions pending on the Effective Date to assume, assign or reject any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising there from;

11.4    Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

11.5    Decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document      Page 23 of 29

11.6    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

11.7    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan, including the provisions of Article 9 hereof;

11.8    Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court Order, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

11.9    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

11.10   Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

11.11   Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

11.12   Enter an order concluding the Reorganization Case.

If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Reorganization Case, including, without limitation, the matters set forth in this Article, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1    Fractional Dollars. Any other provision of the Plan notwithstanding, no payments of fractions of dollars will be made to any holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

12.2    Modification of Plan. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

12.3    Withdrawal of Plan. The Debtor reserves the right, at any time prior to entry of the Confirmation Order, to revoke or withdraw the Plan. If the Debtor revokes or withdraws the Plan under this Section 12.3 or if the Effective Date does not occur, then the Plan shall be deemed null and void.  In that event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

12.4    Governing Law. Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Alabama, without giving effect to the principles of conflicts of law thereof.

12.5    Time. In computing any period of time prescribed or allowed by this Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than eight days, intermediate days that are not Business Days shall be excluded in the computation.

25

12.6    Payment Dates. Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day.

12.7    Headings. The headings used in this Plan are inserted for convenience only and do not constitute a portion of the Plan or in any manner affect the provisions of the Plan.

12.8    Successors and Assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

12.9    Severability of Plan Provisions. If prior to Confirmation any term or provision of the Plan, which does not govern the treatment of Claims or Interests or the conditions of the Effective Date, is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.10   No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any Claims classification.

12.11   Notices. Notices to be provided under this Plan must be transmitted in writing to the Debtor at both addresses that follow:

Runnin L Farms, LLC
c/o Their Attorneys
SPARKMAN, SHEPARD & MORRIS, P.C.
P.O. Box 19045
Huntsville, AL  35804

        and

Runnin L Farms, LLC
231 Mardis Point Road
Joppa, AL 35087


Respectfully submitted this the 28th day of February, 2020.

**RUNNIN L FARMS, LLC**


*/s/ Donald Barry Lindsey*
Donald Barry Lindsey, President


*/s/ Tazewell T. Shepard III*
Tazewell T. Shepard III
Tazewell T. Shepard IV
*Attorneys for the Debtor*
**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL  35804
Tel: (256) 512-9924
Fax: (256) 512-9837


## CERTIFICATE OF SERVICE

This is to certify that this the 28th day of February, 2020, I have this day served the foregoing motion on all parties requesting notice, all parties listed on the Clerk's Certified Matrix and Richard Blythe, Office of the Bankruptcy Administrator, by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.


*/s/ Tazewell T. Shepard IV*
OF COUNSEL

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: Runnin L Farms, LLC | ) | Case No.: 19-82716-CRJ-11 |
| | ) | |
| EIN: xx-xxx0864 | ) | |
| | ) | |
| Debtor. | ) | CHAPTER 11 |
| | ) | |

## BALLOT FOR ACCEPTING OR REJECTING PLAN

Filed By _____.

THE PLAN REFERRED TO IN THIS BALLOT CAN BE CONFIRMED BY THE COURT AND THEREBY MADE BINDING ON YOU IF IT IS ACCEPTED BY THE HOLDERS OF TWO-THIRDS IN AMOUNT AND MORE THAT ONE-HALF IN NUMBER OF CLAIMS IN EACH CLASS AND THE HOLDERS OF TWO-THIRDS IN AMOUNT OF EQUITY SECURITY INTERESTS IN EACH CLASS VOTING ON THE PLAN. IN THE EVENT THE REQUISITE ACCEPTANCES ARE NOT OBTAINED, THE COURT MAY NEVERTHELESS CONFIRM THE PLAN IF THE COURT FINDS THAT THE PLAN ACCORDS FAIR AND EQUITABLE TREATMENT TO THE CLASS OR CLASSES REJECTING IT AND OTHERWISE SATISFIES THE REQUIREMENTS OF § 1129(B) OF THE CODE. TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT.

### [If holder of scheduled or filed claim]

The undersigned, as a creditor of the above-named debtor in the unpaid principal amount of $_____ with filed proof of claim #_____.

### [If equity security holder]

The undersigned, the holder of [*state number*] _____ shares of [*describe type*] _____ stock of the above named debtor, represented by Certificate(s) No._____ [*or held in my/our brokerage Account No.* _____ at [*name of broker-dealer*]_____.

Case 19-82716-CRJ11    Doc 183    Filed 02/28/20    Entered 02/28/20 08:43:23    Desc
Main Document      Page 28 of 29

**[Check One Box]**

☐ **Accepts the Plan of Reorganization**

☐ **Rejects the Plan of Reorganization**

Dated: _____

Print or type name: _____

Signed: _____

[if appropriate] By: _____

as: _____

**IN ORDER TO BE COUNTED, BALLOTS MUST BE SIGNED AND RETURNED SO THAT THEY ARE RECEIVED BY THE U.S. BANKRUPTCY COURT NO LATER THAN 4:30 P.M. CENTRAL STANDARD TIME ON THE DATE SET BY THE COURT (THE "VOTING DEADLINE"), TO:**

**Clerk's Office**
**U.S. Bankruptcy Court**
**400 Well Street, NE # 222**
**Decatur, AL 35601-1951**